UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NICOLAS D., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 2:22-cv-00354-JDL |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|       Defendant | ) |

### REPORT AND RECOMMENDED DECISION

The Plaintiff in this Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) erred in assessing his residual functional capacity (RFC) and the Appeals Council was egregiously mistaken in finding that an affidavit of vocational expert (VE) David W. Meuse, M.S., C.R.C., had no reasonable probability of changing the outcome of the decision. *See* Plaintiff's Brief (ECF No. 13) at 6-19. I find no reversible error and, accordingly, recommend that the Court affirm the Commissioner's decision.

### I. Background

The ALJ found, in relevant part, that the Plaintiff (1) had severe impairments of chronic obstructive pulmonary disease (COPD), generalized anxiety disorder, and major depressive disorder, *see* Record at 18; (2) retained the RFC to perform medium work in an eight-hour workday except that he could never work in extreme cold or in

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), I have substituted Martin O'Malley, who became the Commissioner of Social Security on December 20, 2023, for Kilolo Kijakazi as the defendant in this suit.

1

concentrated atmospheric conditions, could perform tasks that could be learned in thirty days or less carrying out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations (such as folding and packaging a shirt) for two-hour blocks of time during a normal work schedule, could not work with the public, could work in sight of co-workers but could not perform work requiring teamwork or collaborative work, could have occasional interaction with a supervisor, and could adapt to routine changes in the work environment, *see id*. at 21; (3) could perform jobs existing in significant numbers in the national economy, *see id*. at 26; and (4) therefore had not been disabled at any time from June 24, 2020, the date his application was filed, through the date of the decision, November 29, 2021, *see id*. at 27-28. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id*. at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 416.1481.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum.*

*Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

#### A. ALJ's RFC Determination

The Plaintiff first contends that the ALJ's RFC assessment is the product of her own impermissible lay interpretation of the raw medical evidence and is unsupported by a medical opinion as required, warranting remand. *See* Plaintiff's Brief at 6-14. I am unpersuaded.

The Plaintiff argues that the ALJ construed raw medical evidence when she failed to find severe impairments of headaches, vision problems, asthma, or seizure activity confirmed by a brain MRI to be left spastic hemiparesis and incorporate resulting limitations in her RFC determination. *See id*. at 6-11. He points out that "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." *Id*. at 7 (quoting *Santiago v. Sec'y of Health & Hum. Servs.*, 944 F.3d 1, 7 (1st Cir. 1991)).

However, the ALJ adopted the opinions of agency nonexamining consultants Donald Trumbull, M.D., on initial review and Jennifer Marshall, M.D., on reconsideration that the Plaintiff's headaches, vision problems, and asthma were either not medically determinable or not severe and imposed no functional limitations. *See* Record at 75-76, 78, 83, 87. While the Plaintiff separately challenges

3

the ALJ's reliance on the consultants' opinions, that point founders for the reasons discussed below.

The Plaintiff acknowledges that "[t]here is no medical opinion in the record that specifically addresses left spastic hemiparesis and white matter changes." Plaintiff's Brief at 9. He blames the ALJ for that omission, contending that she had a duty to develop the record by obtaining a medical opinion addressing resulting functional limitations. *See id.* at 9-10. However, the Plaintiff was represented by counsel in his proceedings before the ALJ, *see* Record at 15, and it was his counsel's responsibility to see that the issue was adequately explored, *see Faria v. Comm'r of Soc. Sec.*, No. 97-2421, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) (observing that an ALJ "should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored" (cleaned up)).[2]

The Plaintiff next asserts that the ALJ erred in failing to account for the time he would be off task while using a nebulizer prescribed to treat his pulmonary issues. *See* Plaintiff's Brief at 10. However, as the Commissioner notes, *see* Commissioner's Brief (ECF No. 16) at 6, the Plaintiff was advised to use his nebulizer two to three times per day, *see* Record at 337, and he has not explained why he could not administer that prescribed treatment outside of working hours or during normal

---

[2] In his reply brief, the Plaintiff asserts his treating physician, Amanda Powell, M.D., found that his left spastic hemiparesis would cause him to be off task several times per day. *See* Plaintiff's Reply (ECF No. 17) at 2. However, Dr. Powell attributed that off-task limitation to "chronic, severe generalized anxiety which significantly impairs concentration/attention, often with panic attacks." Record at 346.

4

work breaks, *see Christopher B. v. Kijakazi*, No. 1:22-cv-00333-NT, 2023 WL 5949446, at *3 (D. Me. Sept. 13, 2023) (rec. dec.) (holding that a claimant fell short of demonstrating reversible error in an ALJ's failure to make an allowance for nebulizer use when the claimant had not shown he would need two unscheduled breaks of fifteen minutes each in a workday), *aff'd*, 2023 WL 6390661 (D. Me. Oct. 2, 2023). Moreover, Dr. Marshall took into account the Plaintiff's mother's report that he was "on 4 inhalers" and "does 2-3 nebulizer treatments daily" but assessed no additional functional limitations. *See* Record at 82.

The Plaintiff, finally, challenges the ALJ's weighing of the expert opinion evidence of record. He contends that the ALJ wrongly deemed his activities of daily living inconsistent with Dr. Powell's opinions and interpreted raw medical evidence in judging her opinions inconsistent with her objective findings and notes. *See* Plaintiff's Brief at 12-13. However, he fails to come to grips with the ALJ's detailed discussion of his daily activities and medical records, including those of Dr. Powell, *see* Record at 22-24, or to explain how the ALJ's assessment of the weight to be given conflicting evidence—a core duty of an ALJ—constituted impermissible interpretation of raw medical evidence. *See Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) ("The [Commissioner] may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

5

He also faults the ALJ's reliance on the opinions of the agency nonexamining consultants on the basis that they did not have the benefit of review of seven months of later-submitted evidence, including the third of three Powell opinions. *See* Plaintiff's Brief at 13. Yet, as discussed above, the ALJ supportably rejected the Powell opinions, and the Plaintiff does not explain how the remainder of the unseen evidence would have made a material difference to the consultants' review.[3]

### B. Appeals Council's Rejection of Meuse Affidavit

The Plaintiff next contends that the Appeals Council was egregiously mistaken in concluding that a Meuse affidavit submitted to it in the first instance had no reasonable probability of changing the ALJ's decision. *See* Plaintiff's Brief at 15-19. I find no error, let alone egregious error, in the Appeals Council's denial of review.

As this Court has explained, "the Appeals Council's reasons for denying review are owed great deference, although they are ordinarily not beyond review in extreme cases." *Scott L. v. Saul*, No. 2:20-cv-00177-JDL, 2021 WL 1574451, at *5 (D. Me. Apr. 21, 2021) (rec. dec.), *aff'd*, 2021 WL 3234592 (D. Me. July 29, 2021). This Court has found egregious error only when "the Appeals Council's decisions . . . contained material factual errors"; for example, a finding that a doctor's opinion submitted for the first time to the Appeals Council did not relate to the period at issue when that opinion on its face indicated otherwise. *Id*.

---

[3] In his reply brief, the Plaintiff adds that "the ALJ was not qualified to conclude that [the agency nonexamining consultants] would not have altered their opinions had they seen this later developed evidence." Plaintiff's Reply at 3. However, this Court has "repeatedly held that an ALJ is competent to assess the materiality of later-submitted evidence." *Nathaniel-Bishop W. B. v. Kijakazi*, No. 1:20-cv-00323-JAW, 2021 WL 4147245, at *5 (D. Me. Sept. 12, 2021) (rec. dec.), *aff'd*, 2021 WL 5750391 (D. Me. Dec. 2, 2021).

6

The mere fact that a claimant submits conflicting evidence for the first time to the Appeals Council does not oblige that body to grant review. This Court, accordingly, has characterized the Appeals Council's denial of review following the submission of a conflicting vocational affidavit "as a judgment call that is owed . . . deference, not an egregious error." *Id.*; *see also Janet C. v. Kijakazi*, No. 2:22-cv-00018-LEW, 2022 WL 17175383, at *3 (D. Me. Nov. 22, 2022) (rec. dec.), *aff'd*, 2023 WL 156861 (D. Me. Jan. 10, 2023).

The Plaintiff asserts that in this case, the Appeals Council was egregiously mistaken in finding that there was no reasonable probability that the Meuse affidavit would change the outcome of the case because that affidavit "proved the [VE] testimony at hearing was invalid." Plaintiff's Brief at 2. He asserts that VE Meuse provided evidence that the jobs relied on by the ALJ at Step 5 either were not consistent with the ALJ's RFC finding or did not exist in significant numbers and that one job was obsolete. *See id.* at 15. This argument rests on the faulty premise that the Meuse affidavit unequivocally undermined the testimony of the VE at hearing.

The VE at hearing testified that the job of cleaner, *Dictionary of Occupational Titles* (*DOT*) § 323.687-010, does not entail working with the public and reassured the ALJ that his testimony was consistent with the description of that job in the *DOT*, *see* Record at 64-65—a publication of which the Commissioner continues to take administrative notice, *see* 20 C.F.R. § 416.966(d)(1). Indeed, nothing in the *DOT* description of the cleaner job indicates that it involves work with the public, and the

7

job is rated as "Not Significant" in the category of "People: 8 – Taking Instructions – Helping." U.S. Dep't of Lab., *DOT* § 323.687-010, 1991 WL 672782 (4th ed., rev. 1991). VE Meuse provided, at most, conflicting evidence in expressing his opinion that it was "reasonable to presume" that "interaction" with members of the public would occur during the cleaner job. Record at 11.

Even by VE Meuse's count, there were 48,197 full-time cleaner jobs in the national economy, *see id.*— well above the 10,000 to 11,000 this Court has held to constitute a significant number, *see Vining v. Astrue*, 720 F. Supp. 2d 126, 137 (D. Me. 2010). The Appeals Council accordingly was not mistaken, let alone egregiously so, in concluding that there was no reasonable probability that the Meuse affidavit would change the outcome of the decision.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum and request for oral argument before the District Judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the District Judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: December 22, 2023

<u>/s/ Karen Frink Wolf</u>
United States Magistrate Judge
